Argued March 12; reversed March 27, 1946

## ANDERSON *v.* STANWOOD
### (167 P. (2d) 315)

*W. J. Prendergast, Jr.,* of Portland (with Pauline Brandenfels, of St. Helens, and Leo Levenson, of Portland, on the brief), for appellant.

*David O. Bennett,* of St. Helens (with George G. Van Natta, of St. Helens, on the brief), for respondent.

KELLY, J.

This is an action to recover $5,000 alleged to have been entrusted to defendant pursuant to an agreement that defendant would use said sum in the purchase of certain real property for plaintiff which agreement defendant violated by converting said money to his own use.

Defendant filed an answer containing denials of all the material allegations of plaintiff's complaint.

Thereafter, plaintiff caused the issuance and service upon defendant of a subpoena to attend at a specified time, namely, the 19th day of May, 1945, before the circuit court wherein this action was pending for the purpose of giving his deposition.

Defendant appeared at the appointed time, was duly sworn and testified in effect that on the 30th day of March, Caley A. Stanwood, incorporated, held a real estate broker's license and that he was the designated member for whom such license was held; that he was president, J. M. Person was secretary and Ephim Cannon was assistant secretary. When defendant was asked to name the stockholders of the corporation, his attorney objected and the trial judge sustained the objection.

Defendant was then interrogated concerning his conversation with plaintiff with reference to the purchase of the C. O. Anderson property in Scappoose, and defendant testified to the effect that on the 29th day of March, defendant took plaintiff and wife to Scappoose and that at that time, he, defendant, had an option on the C. O. Anderson property.

Defendant further testified that he had discussed the sale or purchase of that property with C. O. Anderson "maybe a year ago, maybe longer than that, it would be eighteen months ago."

Defendant also testified that he obtained an option on that property on the 29th day of March, 1945; that on the day the option was signed, Mr. and Mrs. C. O. Anderson were at their house and defendant called upon them there. In the deposition sometimes the date of the option is mentioned as the 28th of March, at other times as the 29th. The price net to Mr. and Mrs. C. O. Anderson for the property was placed at $15,000.00.

Defendant also testified that upon the day next following the receipt by him of the option upon the C. O. Anderson property defendant told plaintiff that he, defendant, owned the property; that later, either shortly before midnight of the same day or early on the morning of the following day, defendant as an individual signed an earnest money receipt.

Further, the testimony of defendant represented that he first asked $25,000 of plaintiff for the property and a counter offer therefor of $16,000 was made by plaintiff, which defendant characterized as "too cheap". Further, that the purchase price and terms agreed upon, when the earnest money receipt was signed, were that the purchase price would be $18,000 of which $6,000 was to be paid at the time of the sale and a mortgage was to be executed in the sum of $12,000 over 120 months on a schedule of six per cent. rate. Defendant also testified that at the time plaintiff and defendant made the deal he told plaintiff that he, defendant, had a deed to the property. Earlier in his deposition, defendant had testified that soon after the

execution of the option by Mr. and Mrs. C. O. Anderson, he, defendant, had received a deed to the property.

Defendant further testified that the check for $6,000, delivered to defendant by plaintiff, when the earnest money receipt was executed, was dishonored and returned by defendant to plaintiff; that thereafter plaintiff gave defendant two checks upon The First National Bank of Portland in the aggregate sum of $5,000; that defendant put those checks in his pocket and finally he put the checks in a safety deposit box, and then decided to use them ''along with another cashier's check'' he was using. Defendant supplemented that statement by saying that he had the money earmarked at the time, and that ''it is available and always has been''.

Because the crux of the question before us is best shown in so doing, we quote the concluding questions and answers in defendant's deposition as follows:

''Q The check that you received from Mr. H. T. Anderson you have cashed and have now the money in your possession?
A Yes, sir, I do.
Q May I ask where the money is.''
[Objection interposed and overruled.]
''A Well, I have the money in Portland in a safe spot, and it is earmarked; there is a lot more money than that there.
Q (Mr. Bennett) In what bank do you have your safety deposit box?''
[Objection interposed and overruled.]
''A I don't have it in my own name, I couldn't reveal whose name it is in or where it is very well.
Q (Mr. Bennett) In whose name is your safety deposit box?
A I wouldn't want to reveal that either, sir.

Mr. Bennett: If the court please, I would like an

instruction of the court to the witness to answer the question.

The court: It should be answered."

After an extended argument by counsel where reference was made by plaintiff's attorney to a claim not embraced in the instant suit as follows: "counsel knows and the defendant knows of this five thousand dollars and we still have fifty-nine hundred more to come", counsel for defendant interposed the following statement:

"I submit to Your Honor counsel's argument very amply illustrates my point that that is the sole purpose of this inquiry: Where is this man's money? and that is the reason for these other people being in the court room."

The trial judge, in ruling upon the request that defendant be required to answer, included in his remarks the following statement:

The Court: There are several things that have been suggested to me by the argument of you gentlemen, which I could not know as a part of this trial unless, with regard to whether attachments, which I don't know anything about—frankly, I don't know what these other gentlemen are here for, they have not disclosed it to me; likewise I can't know anything about any other business except for fifty-nine hundred dollars which Mr. Bennett has suggested, so it seems to me that all of those matters I must ignore. * * * * ."

The following colloquy ensued after the court had overruled the objection interposed by defendant's counsel and had ordered defendant to answer the question:

"The Witness: Your Honor, could I ask a question?

The Court: Yes.

The Witness: I would be willing to lay the money on this table any time you tell me, but the reason, my reason for not wanting to reveal it is the man in whose name it is, or my needing the favor of doing it, I gave him my word of honor—if you will tell me the time to put it on this desk I will do that.''

Thereafter, upon motion of plaintiff, defendant's answer to plaintiff's complaint was stricken, an order of default as to defendant was entered and judgment for want of an answer was rendered against him in the sum of $5,000 and costs and disbursements, from which judgment defendant appeals.

Defendant contends that the trial court erred in striking defendant's answer to plaintiff's complaint and entering judgment against defendant for want of an answer.

The course taken by the trial court is based upon the provisions of Section 3-209, O. C. L. A. That section is as follows:

"Disobedience to a subpoena, or a refusal to be sworn, or to answer as a witness, or to subscribe an affidavit or deposition when required, may be punished as a contempt by the court or officer before whom he is required to attend or the refusal takes place, and if the witness be a party, his complaint, answer, or reply may be stricken out.'' Sec. 3-209, Vol. 1, O. C. L. A., pp. 373-374.

Defendant argues that the foregoing section, as applied by the trial court, is unconstitutional for the reason that it deprives defendant of his property without due process of law.

Section 10 of Article 1 of the Constitution of Oregon provides, among other things, that every man shall

have remedy by due course of law for injury done him in his person, property or reputation.

This presents the question as to the basis upon which a court may properly strike the pleading of a party litigant when such party refuses to answer as a witness.

To support the action of the trial judge in the instant case plaintiff cites three cases.

The first is *Hammond Packing Co. v. Arkansas*, 212 U. S. 322, 52 L. Ed. 530, 29 S. Ct. 370, 15 Ann. Cas. 645.

A very material distinction between the instant case and the Hammond Packing Company case is that there the testimony of sixteen persons, who were officers and agents of the packing company, was sought and the company declined to produce them, while in the case at bar the defendant was the only witness whose deposition was sought and he appeared and testified until he was asked to state where and in whose name he had his safety deposit box and from the record before us the further examination of defendant was terminated by the motion of plaintiff to strike defendant's answer and enter judgment against defendant; and not by any further refusal on defendant's part than that which applied merely to the identity of the party in whose name the safety deposit box was held containing $5,000 which defendant claimed to be an earnest money payment on a purchase by plaintiff of certain real property owned by defendant, the balance of which purchase price was to be secured by a mortgage after the payment of the further sum of $1,000, which mortgage was to be in the sum of $12,000.

We quote from the opinion in the Hammond Packing Company case:

"This case presents a failure by the defendant to produce what we must assume was material evidence in its possession, and a resulting striking out of an answer and a default. The proceeding here taken may therefore find its sanction in the undoubted right of the lawmaking power to create a presumption of fact as to the bad faith and untruth of an answer to be gotten from the suppression or failure to produce the proof ordered, when such proof concerned the rightful decision of the cause. In a sense, of course, the striking out of the answer and default was a punishment, but it was only remotely so, *as the generating source of the power was the right to create a presumption flowing from the failure to produce.*" * * * * (Italics supplied.)

In its ultimate conception, therefore, the power exerted below was like the authority to default or to take a bill for confessed because of a failure to answer, based upon a presumption that the material facts alleged or pleaded were admitted by not answering, and might well also be illustrated by reference to many other presumptions attached by the law to the failure of a party to a cause to specially set up or assert his supposed rights in the mode prescribed by law."

The second case cited by plaintiff is *Lawson v. Black Diamond Coal Mining Co.,* 44 Wash. 26, 86 P. 1120. In that case, the interrogations in question were propounded under Section 6009, Ballinger's Ann. Codes and Stats., which provides as follows:

"Instead of the examination being had at the trial, as provided by the last section, the plaintiff, at the time of filing his complaint or afterwards, and the defendant, at the time of filing his answer or afterwards, may file in the clerk's office interrogatories for the discovery of facts and documents

material to the support or defense of the action, to be answered on oath by the adverse party.''

The answer was stricken and judgment taken by default under Section 6013, Ballinger's Ann. Codes and Stats., which provides as follows:

''If a party refuse to attend and testify at the trial, or to give his deposition, or to answer any interrogatories filed, his complaint, answer or reply may be stricken out, and judgment taken against him, and he may also, in the discretion of the court, be proceeded against as in other cases for a contempt: Provided, That the preceding sections shall not be construed so as to compel any person to answer any question when such answer may tend to criminate himself.''

The contention was there made that section 6013, supra, deprived defendant of its property without due process of law in violation of section 1 of the fourteenth article of amendments to the Constitution of the United States.

We quote from the opinion:

'' * * * * If the statute be construed as authorizing the striking of the answer and the taking of judgment by default, for failure to answer interrogatories, solely as a punishment for contempt, and without any regard to the substance of the interrogatories or the nature of the discovery sought, this objection would seem to be well taken. McVeigh v. U. S. 11 Wall. (U. S.) 259, 20 L. Ed. 80; Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914; Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215. If, on the other hand, the refusal of a party to attend and testify at the trial, or to give his deposition, be treated as an implied admission of the fact at issue on his part, the same as a failure to deny the allegations of a pleading, we think the statute is free from constitutional objection. From

a party's refusal to testify it may well be presumed that, if his testimony were given, it would sustain the cause of action or defense of his adversary, and we think that this is a presumption that the law and the courts have a right to indulge. On the same principle, the refusal of a party to answer interrogatories may be treated as an implied admission of the facts in relation to which a discovery is sought. *But, if there are numerous issues in a case, and a discovery is sought only as to one of these issues, the striking of the answer and the taking of judgment on all the issues, for failure to make discovery as to one, can only be justified on the theory that the judgment is given as a punishment for the failure to make discovery, and it may well be doubted whether such a proceeding can be sustained under the authorities above cited.*" (Italics supplied.)

"Assuming that the statute is valid, however, even if construed contrary to the above views, we are still satisfied that a party invoking its penalty must show that his adversary has failed to make discovery of facts *material to the support of the action or defense.*"

*Feingold v. Walworth Bros., Inc., et al,* 238 N. Y. 446, 144 N. E. 675, is the third and last case cited by plaintiff. That was an action to recover damages for fraudulent representations as to the value of certain shares of corporate stock. The answer set up a general denial and as an affirmative defense, accord and satisfaction and a release under seal. Defendants consisted of the corporation above named and the individuals comprising Walworth Sales Company.

In the opinion, we find this statement:

" * * * * Plaintiff, as we have seen, seeks the discovery of the papers which are withheld, in order to establish the value of the stock. They would not if produced tend to establish that plaintiff sold

his stock in reliance upon false representations as to its value.

The order striking the answer of all the defendants was modified by providing that the corporate defendants should be debarred solely from maintaining the particular claim that the value of the stock was less than $200,000, and as so modified said order was affirmed with costs to appellants.

■ We think that the foregoing authorities reflect the principle that the validity of an order striking a pleading pursuant to the statute under consideration is restricted to those cases where the failure to answer obviously withholds a fact or facts material to his adversary's case and is limited to the effect that ensues from any reasonable presumption which may be drawn from the refusal to discover such fact or facts.

■ In the case at bar, defendant's refusal to tell who controlled access to the box containing the money which he said he had received from plaintiff, or to state definitely the whereabouts of such box, could not raise a presumption that the circumstances under which he received the money were in any wise different from those to which he freely testified while giving the deposition in suit, namely, as a part of the initial payment upon the consideration for certain real property which defendant had agreed to sell and plaintiff had agreed to buy, coupled with the further agreement that in addition to the delivery of the fund of $5,000. so received by defendant, plaintiff would pay $1,000 and a mortgage would be given securing the balance of said consideration amounting to $12,000.

■ We think that upon cross-examination the question defendant declined to answer would have been permissible as a basis for impeachment, if plaintiff

could produce the party so said to have the control of said safety box, and such party would deny defendant's statement. On that ground a presumtion might be indulged to the effect that defendant, by refusing to answer, admitted that there was no safety box containing the funds mentioned. Such presumption, however, should not have been given the effect of relieving plaintiff of the necessity of establishing that the agreement under which he paid the $5,000 to defendant was in accordance with the allegations of his complaint. Defendant has not impliedly admitted plaintiff's allegations in that respect; but in his deposition defendant testified to an agreement in conflict and at variance with those allegations; and, as stated, in his answer defendant denied all of the allegations of plaintiff's complaint.

■ No burden rested upon plaintiff, in establishing his cause of action, requiring him to prove the whereabouts of the money he delivered to defendant. The receipt of the money being admitted by defendant in his testimony, it remained only for plaintiff to prove that the agreement under which the money was delivered to defendant was that which plaintiff alleges in his complaint and that defendant breached that agreement and thereafter refused upon demand to return the money so delivered.

■ While, as stated, the question that defendant declined to answer was a proper one on cross-examination as a test of defendant's credibility, particularly, if the alleged custodian of that fund had been named and thereafter had contradicted defendant, nevertheless, the question had no direct relevancy to the issues tendered by the complaint and answer.

■ We are constrained to hold that as applied by the trial judge in the instant case, the provision of the

statute authorizing the court to strike a litigant's pleading for refusing to answer a question propounded while such litigant is testifying, is in conflict with the provision of the state constitution according to every man a remedy by due course of law for injury done him in his person, property or reputation.

The judgment of the circuit court is reversed and this cause is remanded with instructions to reinstate defendant's answer to plaintiff's complaint and for such further proceedings as are not inconsistent herewith.

BRAND, J., concurs in the result.