[No. 35411. *En Banc.* May 4, 1961.]

MICHAEL J. MITCHELL et al., *Respondents*, v. EMMETT WATSON et al., *Appellants.**

*Reported in 361 P. (2d) 744.

*Garvin, Ashley & Foster* and *Daniel J. Riviera*, for appellants.

*Richard D. Harris*, for respondents.

WEAVER, J.—This case involves the interpretation, application, and constitutionality of Rule of Pleading, Practice and Procedure 37, RCW, Vol. 0, which designates consequences that may follow the refusal of a party or deponent to make discovery.

Defendants appeal from a money judgment in the sum of $9,025 entered against Emmett Watson and the marital community of Emmett Watson and Betty M. Watson, his wife.

Their assignments of error require review of an intermediate "Order on Contempt in Presence of Court," entered February 10, 1959. Rules on Appeal 14, 17; RCW, Vol. 0. The order recites that

" . . . said Emmett Watson did refuse to answer said questions as set forth in the Order dated January 21, 1959, herein, while on the witness stand in immediate view and presence of the Court . . . "

In addition, the order: (a) adjudged Emmett Watson guilty of contempt of court; (b) struck the answer of defendants Watson; (c) entered judgment by default against them on all issues, except the amount of damages to be awarded plaintiffs; (d) continued the trial on the issue of damages until the issues between plaintiffs and other defendants had been tried (Subsequently, all other defendants were dismissed from the action.); (e) prohibited defendants Watson from participating in the trial for damages "in any manner whatsoever until Emmett Watson complies with the lawful orders of this Court"; and (f) awarded plaintiffs' lawyers judgment for $200 attorneys' fees against defendants Watson.

Defendants urge that the order of February 10, 1959, if entered as punishment for the contempt of court of Emmett Watson, is void as a deprivation of property without due process of law and in violation of the fourteenth amendment to the constitution of the United States.

The facts, from which this issue arises, are these:

Emmett Watson, a reporter, wrote, and a Seattle daily newspaper published, a column in which he stated:

"Three noted ex-cons are busy about town putting together a burglar alarm system. The guy who installs it is an expert—served in three state prisons for a total of 12 years—for burglary."

At the time of publication, and prior thereto, the three plaintiffs, doing business as the A & M Burglar Alarm & Signaling Device Company, were in the process of perfecting, marketing, and installing burglar alarms in the area served by the Seattle daily newspaper.

This action having been commenced, plaintiffs' counsel served written interrogatories directed to defendant Watson, pursuant to Rule of Pleading, Practice and Procedure 33; RCW, Vol. 0. They were:

"1. Referring to the subject of interrogation in your deposition of March 22, 1957, at page 10, line 23, and following; from how many persons or person did you obtain the information which was the basis for your insertion in your column 'This Our City' of the material alleged herein to be libelous.

"2. What are the names and addresses of each of the persons involved in your answer to interrogatory number one.

"3. What are the occupations and business addresses of each of said people?"

Upon objection, two additional questions were stricken by the court.

Not having answered the interrogatories, defendant Watson was cited into court to show cause why he should not be punished for contempt and otherwise penalized, pursuant to Rule 37; the order of February 10, 1959, was entered. The Watsons were not permitted to participate in the trial for damages.

It is beyond dispute that defendant Watson's refusal to answer was willful. Not only did he refuse to answer the interrogatories propounded to him by counsel in open court, he also refused to answer them *when directed to do so by the judge*. After the hearing, but prior to entry of the order of February 10, 1959 (discussed *supra*), he filed an affidavit in which he stated:

". . . I desire to answer Interrogatory No. 1 by stating: 'one man' and Interrogatory No. 3 (in part) by stating: 'occupation of law enforcement.' I respectfully decline to answer Interrogatory No. 2 and the remainder of No. 3."

Thus, defendant Watson refused to disclose the name and and business address of the man from whom he purportedly received his information.

Rule of Pleading, Practice and Procedure 37, effective in this state January 2, 1951, is substantially the same as federal Rule of Civil Procedure 37, 28 U. S. C. (1958 ed.) pp. 5160-61. Because of its length, it is set forth as an appendix to this opinion. The rule addresses itself, with particularity, to the possible consequences of failure or refusal of a party or other deponent to make discovery by listing a variety of remedies.

Rule 37(a) provides the procedure for compelling answers to oral or written interrogatories by court order and for assessing costs and attorney's fees. The order of February

10, 1959, assesses $200 attorneys' fees against defendants Watson.

Rule 37 (b) (1) authorizes punishment for contempt, by a party or witness, in disobeying court orders to compel an answer. The order of February 10, 1959, finds defendant Emmett Watson guilty of contempt committed "in immediate view and presence of the Court." It does not, however, impose any penalty upon him for this contempt unless the balance of the order is considered as punishment.

Rule 37 (b) (2) provides additional sanctions applicable only to a "party or an officer or managing agent of a party" who refuses to obey a discovery order of the court. To enforce compliance,

". . . the court may make such orders in regard to the refusal as are *just*, and among others the following:" (Italics ours.)

Rule 37 (b) (2) (i) authorizes the court to enter an order determining that designated facts springing from the unanswered questions "shall be taken to be established for the purposes of the action . . ."

In the instant case, the order of February 10, 1959, does not contain a sanction based upon this portion of the rule.

Rule 37 (b) (2) (ii) authorizes the court to refuse to allow the disobedient party to support or oppose designated claims or defenses.

Rule 37 (b) (2) (iii) permits the court to strike pleadings or parts thereof, to stay further proceedings, and to dismiss the action or render judgment by default against the disobedient party. The order of February 10, 1959, struck defendants' answer, entered default judgment against them on the question of liability, and prohibited them from participating in the trial for damages.

Rule 37 (b) (2) (iv) provides for the arrest of a disobedient party.

Rule 37 (c) permits the assessment of costs, and subparagraph (d) authorizes the court to dismiss an action, to strike pleadings, or to enter judgment for default upon a party's willful failure to appear before a deposition officer,

or for failure to serve answers to interrogatories submitted under Rule 33.

Without adequate sanctions, the discovery procedure would be ineffectual. One authority describes the rule in these words:

"The rule is flexible. Its language is significant. The court makes such orders 'as are just' and is not limited in any case of disobedience to a stereotyped sanction. The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective and plural: the court in addition to fine or imprisonment for contumacious disobedience, *may, within reason, use as many and as varied sanctions as are necessary to balance the scales of justice against any weight or advantage to the disobedient party*." (Italics ours.) 2 Barron and Holtzoff, Federal Practice and Procedure (Rules ed.), § 851, p. 552.

Although Rule 37 is broader and more explicit than our statutory provisions existing prior to its adoption, the rule did not inject a new theory into the law of this jurisdiction.

Our first legislature provided that

"If a party refuses to attend and testify at the trial, or to be examined upon a commission, or to answer any interrogatories filed, his complaint, answer, or reply may be stricken out, and judgment taken against him, and he may also, in the discretion of the court, be proceeded against as in other cases for a contempt: *Provided*, That the preceding sections shall not be construed so as to compel any person to answer any question, where such answer may tend to criminate himself." Laws of 1854, Civil Practice, Chapter XXXIII, § 310, p. 190.

The statute appeared in all codes[1] of the state until 1957 when, having been abrogated and superseded by Rule 37, it was repealed. Laws of 1957, chapter 50, § 1.

In *Livesley v. O'Brien*, 6 Wash. 553, 34 Pac. 134 (1893), this court affirmed a judgment entered against defendants upon their failure to answer interrogatories served upon them.

The constitutionality of the statute was first questioned

---

[1]Code of 1881, § 408; 2 Hill's Code, § 1665; 2 Bal. Code, § 6013; Rem. & Bal., § 1230; Rem. 1915 Code, § 1230; Rem. Comp. Stat., § 1230; Rem. Rev. Stat., § 1230; RCW 5.04.060.

in *Lawson v Black Diamond Coal Mining Co.*, 44 Wash. 26, 86 Pac. 1120 (1906), when plaintiff brought suit for a broker's commission. The trial court struck defendant's answer to certain interrogatories and ordered defendant to make its answers more specific in certain particulars; the defendant failed to comply. Upon motion, the court struck defendant's answer and entered default judgment according to the prayer of the complaint.

In reversing the judgment and permitting defendant ten days in which to answer the interrogatories, this court set forth the *rationale* of the 1854 statute.

"The appellant earnestly insists that § 6013, *supra*, deprives it of its property without due process of law, in violation of § 1 of the Fourteenth Article of Amendments to the constitution of the United States. If the statute be construed as authorizing the striking of the answer and the taking of judgment by default, for failure to answer interrogatories, *solely as a punishment for contempt, and without any regard to the substance of the interrogatories or the nature of the discovery sought, this objection would seem to be well taken. McVeigh v. United States*, 11 Wall. 259, 20 L. Ed. 80; *Winsor v. McVeigh*, 93 U. S. 274, 23 L. Ed. 914; *Hovey v. Elliott*, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215. If, on the other hand, the refusal of a party to attend and testify at the trial, or to give his deposition, be treated as an implied admission of the facts at issue on his part, the same as a failure to deny the allegations of a pleading, we think the statute is free from constitutional objection. From a party's refusal to testify it may well be presumed that, if his testimony were given, it would sustain the cause of action or defense of his adversary, and we think that this is a presumption the law and the courts have a right to indulge. On the same principle, the refusal of a party to answer interrogatories may be treated as an implied admission of the facts in relation to which a discovery is sought. But, if there are numerous issues in a case, and a discovery is sought only as to one of these issues, the striking of the answer and the taking of judgment on all the issues, for failure to make discovery as to one, can only be justified on the theory that the judgment is given as a punishment for the failure to make discovery, and it may well be doubted whether such a proceeding can be sustained under the authorities above cited." (p. 32) (Italics ours.)

A distinction may be drawn between a plaintiff in contempt of court and a defendant. A plaintiff in contempt may not be entitled to proceed with the trial of his case on the merits, as a matter of right, but a defendant, who is refused a trial, may be deprived of a constitutional right to a hearing. Because of the nature of the subject matter, the line between prohibited penalties and permissible sanctions visited upon a contumacious defendant cannot be drawn with precise accuracy by a rule that covers all possible situations.[2]

The leading case on this subject, cited by this court in *Lawson v. Black Diamond Coal Mining Co., supra,* is *Hovey v. Elliott,* 167 U. S. 409, 42 L. Ed. 215, 17 S. Ct. 841 (1897).

This court stated the question as follows:

" . . . a more fundamental question yet remains to be determined, that is, whether a court possessing plenary power to punish for contempt, unlimited by statute, has the right to summon a defendant to answer, and then after obtaining jurisdiction by the summons, refuse to allow the party summoned to answer or strike his answer from the files, suppress the testimony in his favor, and condemn him without consideration thereof and without a hearing, on the theory that he has been guilty of a contempt of court. The mere statement of this proposition would seem, in reason and conscience, to render imperative a negative answer. The fundamental conception of a court of justice is condemnation only after hearing. To say that courts have inherent power to deny all right to defend an action and to render decrees without any hearing whatever is, in the very nature of things, to convert the court exercising such an authority into an instrument of wrong and oppression, and hence to strip it of that attribute of justice upon which the exercise of judicial power necessarily depends."

The court concluded that a default judgment, entered after striking defendant's answer as punishment for his contempt in refusing to obey an order of the court, was void for want of due process of law.

[2]E. H. Schopflocher, Annotation: "Constitutionality, construction, and application of statutes or rules of court which permit setting aside a plea and giving judgment by default, or dismissing suit, because of disobedience of order, summons, or subpoena duces tecum requiring production of documents." 144 A. L. R. 372 (1943).

The contumacy of a party disobeying an order of a court may justify his punishment for contempt, but it does not justify the deprivation of his civil rights or the taking of his property and giving it to another.

■ A refinement of the doctrine of *Hovey v. Elliott, supra,* appears in *Hammond Packing Co. v. Arkansas,* 212 U. S. 322, 53 L. Ed. 530, 29 S. Ct. 370, 15 Ann. Cas. 645 (1908), Mr. Justice White delivering the opinion in both cases.

An order of court, entered pursuant to an Arkansas statute, commanded the Hammond Company, through its officers or agents, to have certain witnesses present for examination and to produce designated books and records. The company having refused, the court struck its answer and other pleadings and entered a $10,000 default judgment in favor of the state for the corporation's violation of the state's anti-trust act.

In affirming the judgment, the court said:

" . . . Is the doctrine of *Hovey v. Elliott* here applicable? To determine this question we must take into view the authority below, exerted not from a merely formal point of view, but in its most fundamental aspect. That is to say, we must trace the power to its true source, and if from doing so it results that the authority exerted flows from a reservoir of unquestioned power it must follow that the action below was not unlawful, albeit in some narrower aspect that action might be considered as unlawful. The essential basis for the exercise of power and not a mere incidental result arising from its exertion is the criterion by which its validity is to be measured. *Hovey v. Elliott involved a denial of all right to defend as a mere punishment.* This case presents a failure by the defendant to produce what we must assume was material evidence in its possession and a resulting striking out of an answer and a default. *The proceeding here taken may therefore find its sanction in the undoubted right of the lawmaking power to create a presumption of fact as to the bad faith and untruth of an answer begotten from the suppression or failure to produce the proof ordered, when such proof concerned the rightful decision of the cause.* In a sense, of course, the striking out of the answer and default was a punishment, but it was only remotely so, as *the generating source of the power was the right to create a presumption flowing from*

*the failure to produce. The difference between mere punishment, as illustrated in Hovey v. Elliott, and the power exerted in this is as follows: In the former due process of law was denied by the refusal to hear. In this the preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense.* The want of power in the one case and its existence in the other are essential to due process, to preserve in the one and to apply and enforce in the other. In its ultimate conception therefore the power exerted below was like the authority to default or to take a bill for confessed [sic] because of a failure to answer, based upon a presumption that the material facts alleged or pleaded were admitted by not answering, and might well also be illustrated by reference to many other presumptions attached by the law to the failure of a party to a cause to specially set up or assert his supposed rights in the mode prescribed by law." (Italics ours.) (p. 350)

It is apparent that the testimony and records sought and withheld in the *Hammond* case went to all of the issues raised by the pleadings.

In *Feingold v. Walworth Bros.*, 238 N. Y. 446, 144 N. E. 675 (1924), the plaintiff alleged that he had been fraudulently induced to sell certain corporate stock for $20,000, whereas its value was $200,000. Defendant refused to produce designated books and papers relevant to the valuation of the stock. The trial court struck defendant's answer and granted judgment for plaintiff. The judgment was reversed, the court saying:

" . . . The case is a proper one for an order precluding the corporate defendants from asserting the claim that the value of the stock was less than $200,000. So far as the order goes beyond the preclusion of the proof which might presumptively be discovered if the papers were produced, it goes beyond the constitutional limitations upon the power to punish for contempt. . . ."

The plaintiff still had to prove he had been defrauded.

In *Anderson v. Stanwood*, 178 Ore. 306, 167 P. (2d) 315 (1946), the plaintiff sued to recover $5,000 alleged to have been entrusted to defendant to purchase certain property for plaintiff. Defendant filed a general denial. Upon examin-

ation, defendant refused to disclose where he had deposited the money, whereupon the court struck his answer and entered judgment for plaintiff. On appeal, the judgment was reversed, and defendant's answer was reinstated for the reason the question had no direct relevancy to the issues tendered by the complaint and answer.

The principles announced in the *Hovey* and *Hammond* cases and followed in the *Feingold* and *Anderson* cases seem to constitute the walls of the corridor in which Rule 37 must operate, for the United State Supreme Court said recently in *Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U. S. 197, 2 L. Ed. (2d) 1255, 78 S. Ct. 1087 (1958), that

"The provisions of Rule 37 which are here involved must be read in light of the provisions of the Fifth Amendment that no person shall be deprived of property without due process of law, and more particularly against the opinions of this Court in *Hovey v. Elliott*, 167 U. S. 409 and *Hammond Packing Co. v. Arkansas*, 212 U. S. 322. These decisions establish that there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause. The authors of Rule 37 were well aware of these constitutional considerations. See Notes of Advisory Committee on Rules, Rule 37, 28 U. S. C. (1952 ed.), p. 4325."

Among the principles reflected by the foregoing authorities that must be considered in the implementation of Rule 37 to the instant case are these:

(a) A defendant who refuses to make discovery may be adjudged in contempt of court and punished. See *State v. Estill*, 55 Wn. (2d) 576, 349 P. (2d) 210 (1960); *Keller v. Keller*, 52 Wn. (2d) 84, 323 P. (2d) 231 (1958).

(b) The court may, as "other consequences, . . . make such orders in regard to the refusal as are just . . ."; but cannot deny to defendant the right to defend the action as "mere punishment." Defendant cannot be deprived of a constitutional right.

(c) The purpose of the court's order shall be to balance

the rights of the parties so that the contemptor does not profit or benefit from his contemptuous act.

(d)    The court may presume and infer, as a matter of law, that the evidence withheld by defendant would, if produced, contradict the contemptor's contentions and support the contentions of plaintiff. The truth of matters thus presumed to be established may result in drastically limiting defendants' proof or in striking all or part of pleaded defenses. This court said in *Lawson v. Black Diamond Coal Mining Co.*, 44 Wash. 26, 36, 86 Pac. 1120 (1906):

" .  .  .  when a party invokes the harsh remedy of striking a pleading and taking a judgment by default, he must not only allege, but must prove, the facts showing the materiality of the facts of which a discovery is sought, where such materiality does not appear from the interrogatories themselves, and no such showing was made in this case. In other words, he must prove that his adversary has failed or refused to make discovery of material facts."

The Oregon court said, in *Anderson v. Stanwood*, 178 Ore. 306, 167 P. (2d) 315 (1946):

" .  .  .  the validity of an order striking a pleading pursuant to the statute under consideration is restricted to those cases where the failure to answer obviously withholds a fact or facts *material* to his adversary's case and is limited to the effect that ensues from any reasonable presumption which may be drawn from the refusal to discover such fact or facts." (Italics ours.)

We turn now to the instant case and the issues raised by the pleadings that may pertain to the unanswered interrogatories.

Plaintiffs alleged that

"Said false, defamatory and libelous publication [heretofore quoted] tended to and did expose the plaintiffs to hatred, contempt, ridicule and obloquy, and operated to deprive plaintiffs of the public confidence and social intercourse and operated to injure the plaintiffs in their business and occupation."

Each plaintiff further alleged that, by reason of the publication, he

" .  .  .  has been injured in his good name and reputation, subjected to public discredit as an honorable and law-

abiding citizen and has sustained mental suffering, distress, humiliation and shame . . . "

Defendants, in their answer, admit the composition, publication, and circulation of the quoted article.

Had defendant Watson identified the alleged source of his information, plaintiffs could have produced him, if available, for the purpose of impeachment. Having refused to identify his alleged informant, the trial court is free to indulge the presumption that defendant Watson admits that there was no such person or that the unidentified person did not make the statement.

In *Farrar v. Tribune Publishing Co.*, 57 Wn. (2d) 549, 358 P. (2d) 792 (1961), this court held that a defendant, in an action for damages for publication of an article libelous *per se*, may introduce evidence in mitigation of damages under the express provision of RCW 4.36.130.

If, upon remand of the instant case, the trial court indulges the presumption that defendant Watson, by his refusal to answer, admits that there was no such informant, or that the unidentified person did not make the statement, then *the trial court is free to reject any and all evidence of mitigation of damages or other proffered defenses which are relevant to or have any reasonable connection with the existence of the alleged informer.*

In summary:

(1) The money judgment, from which this appeal is prosecuted, is reversed;

(2) That portion of the order of February 10, 1959, adjudging Emmett Watson guilty of contempt of court and awarding plaintiffs' lawyers judgment for $200 attorneys' fees, is affirmed;

(3) The case is remanded to the trial court, with instructions (a) to consider the punishment of Emmett Watson for contempt of court in accordance with law; (b) to set aside the judgment of default against defendants and reinstate their answer; (c) to enter a preclusive order in accordance with Rule 37 that is deemed just in the premises; and (d) to proceed in a manner not inconsistent herewith.

Costs of this appeal shall abide the final determination of the action. Rule on Appeal 55(2), effective January 2, 1961, RCW, Vol. 0.

FINLEY, C. J., MALLERY, DONWORTH, ROSELLINI, OTT, and HUNTER, JJ., concur.

HILL and FOSTER, JJ., did not participate.

---

## APPENDIX

Rule of Pleading, Practice and Procedure 37, RCW, Vol. 0.

"Refusal to make discovery: Consequences. (a) *Refusal to Answer.* If a party or other deponent refuses to answer any question propounded upon oral examination, the examination shall be completed on other matters or adjourned, as the proponent of the question may prefer. Thereafter, on reasonable notice to all persons affected thereby, he may apply to the court in the county where the deposition is taken for an order compelling an answer. Upon the refusal of a deponent to answer any interrogatory submitted under Rule 31 or upon the refusal of a party to answer any interrogatory submitted under Rule 33, the proponent of the question may on like notice make like application for such an order. If the motion is granted and if the court finds that the refusal was without substantial justification the court shall require the refusing party or deponent and the party or attorney advising the refusal or either of them to pay to the examining party the amount of the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees. If the motion is denied and if the court finds that the motion was made without substantial justification, the court shall require the examining party or the attorney advising the motion or both of them to pay to the refusing party or witness the amount of the reasonable expenses incurred in opposing the motion, including reasonable attorney's fees.

"(b) *Failure to Comply With Order.* (1) *Contempt.* If a party or other witness refuses to be sworn or refuses to answer any question after being directed to do so by the court in the county in which the deposition is being taken, the refusal may be considered a contempt of that court.

"(2) *Other Consequences.* If any party or an officer or

managing agent of a party refuses to obey an order made under subdivision (a) of this rule requiring him to answer designated questions, or an order made under Rule 34 to produce any document or other thing for inspection, copying, or photographing or to permit it to be done, or to permit entry upon land or other property, or an order made under Rule 35 requiring him to submit to a physical or mental examination, the court may make such orders in regard to the refusal as are just, and among others the following:

"(i) An order that the matters regarding which the questions were asked, or the character or description of the thing or land or the contents of the paper, or the physical or mental condition of the party, or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(ii) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing in evidence designated documents or things or items of testimony, or from introducing evidence of physical or mental condition;

"(iii) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

"(iv) In lieu of any of the foregoing orders or in addition thereto, an order directing the arrest of any party or agent of a party for disobeying any of such orders except an order to submit to a physical or mental examination.

"(c) *Expenses on Refusal to Admit.* If a party, after being served with a request under Rule 36 to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial thereof and if the party requesting the admissions thereafter proves the genuineness of any such document or the truth of any such matter of fact, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making such proof, including reasonable attorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made.

"(d) *Failure of Party to Attend or Serve Answers.* If a party or an officer or managing agent of a party wilfully fails to appear before the officer who is to take his deposition,

after being served with a proper notice, or fails to serve answers to interrogatories submitted under Rule 33, after proper service of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party. [Adopted Nov. 22, 1950 as RPPP 37, effective Jan. 2, 1951; adopted Sept. 9, 1959 as RPPP 37, effective Jan. 1, 1960.]"