529 P.2d 264

**John H. HEMINGWAY, Plaintiff-Appellant,**

v.

**George FRITZ, dba Wood River Journal, Defendant-Respondent.**

**No. 11368.**

Supreme Court of Idaho.

July 24, 1974.

E. Lee Schlender of Schlender & Young, Ketchum, for appellant.

John Doerr of Doerr & Reed, Twin Falls, for respondent.

BAKES, Justice.

Plaintiff-appellant John H. Hemingway brought this action for libel. He is a member of the Idaho Fish and Game Commission who resides in the Wood River Valley, six miles north of Ketchum, Idaho. The defendant-respondent George Fritz is the owner and publisher of the Wood River Journal, a weekly newspaper of general circulation in the Wood River Valley. Respondent Fritz published a news article [1] and an editorial [2] in the October 12, 1972,

1. The news article was entitled, "Commissioner Outbids Dept." and read as follows: "It was recently brought to light that a parcel of land was lost as a fish and game management farm when one of the Idaho Fish and Game Commissioners out-bid the Department. "The land in question is known as the Half Way Ranch, between Carey and Richfield, in Lincoln County. This ranch has Little Wood River frontage and also natural marsh within its boundaries and is located on either side of Highway 93A. "The Idaho Fish and Game Department owns such farms throughout the State. Those on Silver Creek and Carey Lake provide access to hunting and fishing waters and the actual farm ground and pasture is leased out for private use. "According to an Idaho Fish and Game employee, the Half Way Ranch was lost when the proposed price of $24,000.00 was doubled by one of the Idaho Fish and Game Commissioners, Jack Hemingway."

2. The editorial, entitled "Privileged Information," read as follows: "As sports minded people it becomes interesting at times to analyze some of the political doings of the Fish and Game Commissioners. "We refer now specifically to the appointment and sustainment of one of the commissioners, Jack Hemingway. Few know

edition of the Wood River Journal which were generally critical of the conduct of Hemingway, who had purchased a ranch on the Little Wood River which the Idaho Fish and Game Department was interested in purchasing. The publications generally charged Hemingway with conflict of interest. The trial court reviewed these newspaper clippings, and the depositions and affidavits submitted, and granted summary judgment to the defendant.

Hemingway alleged that the article falsely accused him of using confidential Fish and Game Department information for his private gain. He claims that he did not know the department's appraised price of the property when he made his offer for it, and did not purchase the property until he received assurances from department officials that the department was no longer interested in it. Hemingway claims that the editorial, which states that there was an "obvious outbidding by a person with privileged information," accuses him of misusing his office.

It is not clear from reading the supposedly libelous items that a material, false, defamatory statement has been made. Hemingway did in fact purchase the land in question at a price roughly double that at which the Fish and Game Department had once offered to buy it. Whether or not Hemingway was in possession of privileged information when he made his intitial inquiry about the property, the result was the same—property that the Fish and Game Department had once desired to obtain to provide fishermen public access to a popular stream had come to rest in the hands of a member of the Fish and Game Commission. Hemingway knew at the time of the closing of the sale of the department's previous attempt to obtain it and had seen the department's file on the property, including their appraisal of the property and their offer.

 Hemingway was a public official by virtue of his appointment to the Fish and Game Commission.[3] Critical state-

---

exactly what he has done to further conservation in Idaho and despite the appointment over much outcry in the State, question the fact that he should be in this position.

"More specifically we point to the land requisition programs used by the Fish and Game Department to gain access to hunting and fishing areas and to perpetuate refuges and habitat acreages. Land is continually bought by the Idaho Fish and Game Department for these purposes. These purchases go through Department personnel, then across the desk of the Commission for approval.

"A recent purchase of land in Lincoln County, including natural marsh and Little Wood River stream frontage, finds one of the Commissioners, Hemingway, doubling the bid that was offered by the Fish and Game Department.

"This information was supposedly confidential but never-the-less the land was lost for conservation purposes when the proposed purchase became known to the commissioners.

"The land bid on the Half-way Ranch between Carey and Richfield was $24,000.-00; but the actual sale was made to Hemingway for $48,000.00, an obvious out-

bidding by a person with privileged information.

"Hemingway is also a part owner in the Stoker Creek Company on tributaries of Silver Creek which last year was made into another stretch of fly's only stream. Duck hunting is prohibited on this property except to members of the Company, another breach of policies of the Idaho Fish and Game Department as they are trying for a better land-owner—hunter relationship.

"As an election year it's time that incumbents and hopefuls as well, take a good hard look at policies in the Fish and Game Department. We need conservation in the State—the kind that helps the taxpayer, sportsman and not independent concerns."

3. *See* Prosser, The Law of Torts, n. 18, p. 821 (1971), for a list of the various minor officials such as high school principals, police lieutenants, etc., that have been held to be public officials for purposes of applying First Amendment restrictions upon public officials' right to bring libel actions. While these cases were collected to catalogue the categories of the public officials who are denied the right to bring libel actions for falsehoods not intentionally or recklessly published, we believe

ments aimed at public officials and their conduct in relation to their public trust should not be microscopically examined. Rather, "the article must be read and construed as a whole." [4] Reading the article and editorial as a whole, we do not feel that Hemingway has been untruthfully accused of a misuse of his public office. Whatever impropriety he may feel he has been accused of by the use of "privileged information" in bidding, Hemingway in his deposition in essence admitted the essential facts in the publications—that the property was acquired with knowledge that the department wanted the property for public use and with knowledge of the price at which the department had previously offered to acquire it. While the article characterized Hemingway's actions in a manner which some might consider to be unjustifiably derogatory, "Political epithets and hyperbole leveled against the actions of public officials are within the freedom of expression protected by the First Amendment afforded to citizens criticizing the function of their government." [5] As stated in New York Times v. Sullivan,[6] "[D]ebate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." The article contains no materially untrue facts; thus there was no action for libel.[7]

 Hemingway raises a procedural issue claiming that he is entitled to judgment upon the ground that Fritz refused to answer interrogatories directed to him concerning the identity of his alleged informant with the Fish and Game Department. *See* I.R.C.P. 37(b)(2). Whether such an informant actually existed, what he told Fritz, and how he obtained his information would be of importance if the article were

false.[8] However, Fritz's motivation as to maliciousness in publishing the material is irrelevant if the material is true.[9] Summary judgment will not be set aside for failure to answer irrelevant interrogatories.

Accordingly, the judgment is affirmed. Costs to respondent.

SHEPARD, C. J., and DONALDSON, McQUADE and McFADDEN, JJ., concur.

they also illustrate the types of public officials who must be willing to accept exaggerated, crude or tactless criticism in relation to their public duties.

4. Gough v. Tribune-Journal Co., 75 Idaho 502, 508, 275 P.2d 663, 666 (1954).

5. Weeks v. M–P Publications, Inc., 95 Idaho 634, 516 P.2d 193 (1973).

6. New York Times v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).

7. Weeks v. M–P Publications, Inc., *supra*, footnote 5.

8. New York Times v. Sullivan, *supra*, footnote 6.

9. New York Times v. Sullivan, *supra*, footnote 6. Prosser, The Law of Torts, p. 819 (1971).