623 P.2d 103

**SIERRA LIFE INSURANCE COMPANY,
an Idaho Corporation,
Plaintiff–Respondent,**

v.

**MAGIC VALLEY NEWSPAPERS, INC.,**
publisher of Twin Falls Times–News,
William E. Howard, Richard G. High
and William Lazarus, Defendants–Appellants.

No. 12950.

Supreme Court of Idaho.

Sept. 4, 1980.

Rehearing Denied Feb. 23, 1981.

Lloyd J. Webb of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, Harold B. Wahl of Wahl & Gabel, Jacksonville, Fla., for defendants–appellants.

Imhoff, Lynch & Davis, Boise, A. Bob Jordan, Oklahoma City, Okl., for plaintiff–respondent.

BISTLINE, Justice.

Magic Valley Newspapers, Inc., William Howard, Richard High and William Lazarus (hereinafter referred to collectively as the "newspaper"[1]), appeal a monetary judgment entered against them for libel. As a result of the defendants' refusal to obey its discovery order, the trial court struck all defendants' pleadings, thus placing them in default. The discovery order required them to identify confidential sources consulted in the process of preparing articles alleged by the plaintiff–respondent Sierra Life Insurance Co. (hereinafter "Sierra") to be libelous.

## I.

Sierra was, at the time this litigation commenced, an Idaho corporation selling insurance in Idaho and several surrounding states. In September of 1975 Sierra employed 53 agents selling insurance, with the company headquarters in Twin Falls, Idaho. In September, 1975, following the revelation that the state of Nevada had canceled Sierra's license to sell insurance in that state, the newspaper began a series of "investigative reports" on Sierra. The newspaper continued to publish articles about Sierra over the next eight months, including reports on the activities of insurance commissions in Wyoming, Montana, Idaho, Nevada, Utah and New Mexico, which at various times placed restrictions on Sierra's ability to conduct business in the respective states. Reporters for the newspaper in addition traveled to states in which Sierra assets were located, and through their stories cast some doubt on Sierra's claimed values and classifications.

In early 1976 Sierra filed its complaint and demand for a jury trial, alleging that the articles published by the newspaper falsely and maliciously depicted Sierra's financial condition. The complaint contained five counts: libel, injurious falsehood and defamation, tortious interference with contract relations, negligence, and one other later dismissed. In May of 1976 Sierra amended its complaint to include additional allegedly libelous articles printed since the initial filing. Sierra then served upon the newspaper a request for production of documents, including a request for a telephone log of the names of any persons with whom the newspaper had conversed concerning the affairs of Sierra, and any notes as to any personal conversations.

The newspaper filed its answer on May 28, 1976, claiming the truth of the articles published and responding to the discovery request with the tender of a "Limited Response to Request for Production of Documents," in which the newspaper stated that it did have, but would not produce "[c]onfidential, off–record, notes from informants given to the Defendants." Sierra then deposed Richard High and William Lazarus,

---

1. One of Magic Valley's arguments on appeal was that it should not be held liable for the failure of other defendants, allegedly beyond its control, to comply with court–ordered discovery. Since there was no real effort made by the newspaper to disassociate itself from the acts of reporters High and Lazarus–in fact, several editorials by the newspaper declared its continued support for the policy of nondisclosure of sources–we treat the defendants in this case as a single entity.

with both refusing to reveal sources consulted in the preparation of the articles. Lazarus testified that he used no "sources" in his articles.

The newspaper served a series of interrogatories upon Sierra, attempting to determine what in the articles was alleged to be false. Sierra then filed a motion to compel Lazarus and High to answer. At the hearing on this motion the newspaper contended that the statements made to it by its confidential sources were not used, either directly or indirectly, in the stories it published, and contended that the sources had merely suggested to the newspaper the existence of documents or public officials which might provide useful information.

The trial court in stating that it would grant the motion to compel answers, analyzed the situation thusly:

"[I]t seems to me when a reporter becomes a party, a party defendant to an action then he doesn't have that privilege. He no longer is a reporter. He is a party to an action. And I don't believe that any other defendant can stand up and say I am not going to tell you. I don't think that this privilege can be exerted by a reporter who is a party to this type of an action. I think that it is imperative that the plaintiff be given this opportunity for discovery."

The trial court by order entered on September 16, 1976, provided that:

"[t]he Defendants and each of them in this case may not avail themselves of any of the protections afforded to them by the First Amendment to the Constitution and . . . are hereby ordered to answer each and every interrogatory or question propounded to them relating to the source of the information sought by or supplied to them by any informants and to divulge under proper interrogatory or question the nature and substance of such information."

In December, 1976, the newspaper filed in this Court an original action seeking a writ of prohibition to preclude the trial court from enforcing its discovery order. On December 10 oral argument was heard, and

the matter taken under advisement. [Meanwhile, on March 4, 1977, this Court announced its opinion in *Caldero v. Tribune Publishing Company*, 98 Idaho 288, 562 P.2d 791 (1977).] On April 1, 1977, this Court's order was entered, without opinion, dismissing the newspaper's application for the writ of prohibition.

Sierra then moved to strike the newspaper's pleadings and enter its default, based on the sanctions provisions of Rule 37(b) of the Idaho Rules of Civil Procedure.

After oral argument on the motion to strike, the trial court ruled that sanctions would be appropriate, but gave the newspaper thirty days in which to comply with his order of September 16, 1976. In so doing, the trial court stated:

"Well, to be sure that one thing is clear, there is no question in my mind that the quashing of the writ that you applied for, on a writ from the original proceedings to the Supreme Court from this court, the quashing of the writ was a result of the decision in *Caldero*. And *Caldero*, for my money says there is absolutely no privilege of a reporter under the First Amendment of the Constitution; that that privilege goes to the press as a whole to be free from censorship and free from subversion and not to an individual reporter who, under that decision, has no privilege to refuse to answer.

"Now, I acknowledge that the dissenting opinion in that case, as did the dissenting opinions in many of these Federal cases, try to think up some something [sic] about reasonableness and all of that to work something in; but the majority opinion says flat-footedly there is no privilege. And this is the position that I take."

The newspaper then applied to this Court for a writ of review, requesting this Court to review the two orders compelling answers to Sierra's discovery request. Pending a ruling by this Court, Judge Ward extended the time for compliance with his order until July 20, 1977. On July 20 defendants Magic Valley and Howard responded that they were willing to comply

with the discovery order, but were unable to do so, since they did not themselves know the sources, and High and Lazarus were no longer employed by them and thus beyond their control. Defendants High and Lazarus at the same time responded separately that they continued to refuse to reveal confidential sources. On July 22, 1977, this Court by order without opinion denied the application for a writ of review.

The newspaper then filed a motion for summary judgment. In the supporting brief the newspaper set forth a table of each of the claims of allegedly libelous statements, as pieced together from Sierra's answers to interrogatories, together with a series of exhibits of affidavits and other documentary data upon which its claims of truth or other justification of the statements were based.

Sierra responded with affidavits in opposition to the motion for summary judgment. A hearing was held on the motion for summary judgment on August 30, 1977. The following day the trial court issued a memorandum of decision granting the plaintiff's motion to strike the pleadings of the newspaper, and refusing to grant the motion of the newspaper for summary judgment. The court noted that whereas "[m]any of the plaintiff's complaints involve mere semantics where plaintiff urges one word should have been used for another one as used by the defendants," nevertheless, "[d]efendants' motion for summary judgment cannot be granted until the plaintiff has had full discovery." The discovery, in Judge Ward's opinion, was necessary to give the plaintiff the opportunity to show constitutional malice. The newspaper's motion for summary judgment was continued until such time as plaintiff had had adequate discovery. Plaintiff's motion for sanctions and the entry of a default judgment was granted by Judge Ward, the newspaper having failed to comply with the court's order. Judge Ward stated:

"[D]espite the fact that the law in Idaho is clearly established by *Caldero*, there are still those misguided few who believe the law should be otherwise. To impose sanctions only on High and Lazarus would merely make them martyrs to the unbelievers. The sanctions hereinafter delineated will apply to all named defendants."

The newspaper then filed with the trial court a motion to reconsider its disposition of defendants' motion for summary judgment, pointing out that in its memorandum of decision the trial court did not deal with the defendants' defense of truth. The following took place at oral argument on the motion:

(Mr. Webb)

"[W]e believe that we have established the truth and, therefore, would be entitled to a summary judgment on that issue. And that, of course, would be unrelated both to the issue of malice and the corollary issue of the unnamed sources in that either they are true or false. The documents we have before the court show that those statements are true; and therefore the identity of the tipsters · is moot as indicated by the *Hemingway versus Fritz* case. And that in essence is the argument on that, Judge.

"THE COURT: Well, I think the term constitutional malice includes the lack of truth in a libel action. It has to, but that then–Mr. Imhoff."

Mr. Imhoff, attorney for Sierra, thereupon contended, among other things, that there were several issues of fact still in dispute. However, the court never ruled specifically on the newspaper's defense of truth, except to deny the motion to amend the memorandum of decision.

In granting Sierra's motion for sanctions and entering the default of all defendants, the trial court ruled that since the default admitted all well–pled elements of the plaintiff's complaint, Sierra would not be required to prove either falsity, malice, or causation. The sole remaining issue for trial was the amount of damages suffered by Sierra, on which issue the court ruled that defendants could be heard. Trial on that issue, after several postponements, was had on January 25, 1978.

At trial, Sierra Life's damage evidence centered on the loss of its sales agency force and the loss of future profits. Sierra called as expert witnesses insurance specialists who testified on the cost of acquiring and training a sales staff, and on lost profits.

On April 4, 1978, the trial court entered a "memorandum of decision," granting judgment in favor of Sierra in the amount of $1,942,680. This amount was arrived at by multiplying the cost of training a sales agent ($72,164) by the number of sales agents on Sierra's staff (12) at the time the newspaper began publishing its stories ($865,968), plus the proportion of lost profits attributable to the loss of those twelve agents ($1,076,712).

## II.

■ Our first concern is the propriety of the trial court's decision striking the pleadings of the newspaper as a sanction for refusal to comply with court–ordered discovery. In approaching that question we are equally mindful that a defendant ought not profit from his own refusal to make discovery, but such recalcitrance should not take away those defenses which are not affected by his refusal to disclose.

The Supreme Court of the United States long ago ruled that the imposition of a default judgment for failure to obey an order to produce evidence could constitute a denial of due process. *Hovey v. Elliott*, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897). In *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909), it recognized that the failure to produce evidence may be merely "an admission of the want of merit in the asserted defense." The Advisory Committee noted in reporting on the 1937 draft of the Federal Rules of Civil Procedure that a distinction must be made between "the justifiable use of such measures as a means of compelling the production of evidence, and their unjustifiable use, as in *Hovey v. Elliott*, for the mere purpose of punishing for contempt." Reprinted in Moore's Federal Practice ¶ 37.-01[2] (citations omitted). This distinction was given approval by the high Court in

*Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958):

"These decisions [*Hovey* and *Hammond Packing*] establish that there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause. The authors of Rule 37 were well aware of these constitutional considerations."

In the present case Sierra asserts that the newspaper's continued refusal to comply with discovery prevented it from proving constitutional malice, an essential required element under *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

■ Assuming, *arguendo*, that there was a legitimate basis for Sierra's discovery request, we must still determine whether the sanctions threatened and then imposed were justified, in order to allow Sierra to present its case–or, as contended by the newspaper, were overly harsh and in the nature of punishment. If, as in the *Hammond Packing* case, we assume that the refusal to produce evidence claimed to have relevance on the issue of malice is an "admission of the want of merit in the asserted defense," still we must inquire whether that refusal should impede the newspaper's defenses of truth and lack of causal relationship between the statements published by the newspaper and the damages suffered. In *Mitchell v. Watson*, 361 P.2d 744 (Wash. 1961), upon a reporter's refusal to comply with court–ordered discovery, the trial court entered a default judgment against the reporter, following a Washington rule substantially the same as our Rule 37. The judgment was reversed on appeal by the Washington Supreme Court, which cited the cases noted above, and concluded that the imposition of a default judgment was unwarranted and constituted a deprivation of due process of law. *Lawson v. Black Diamond Coal Mining Co.*, 86 P. 1120 (Wash.1906), was also cited therein for similar principles:

"From a party's refusal to testify it may well be presumed that, if his testimony were given, it would sustain the cause of action or defense of his adversary, and we think that this is a presumption the law and the courts have a right to indulge. On the same principle, the refusal of a party to answer interrogatories may be treated as an implied admission of the facts in relation to which a discovery is sought. But, if there are numerous issues in a case, and a discovery is sought only as to one of these issues, the striking of the answer and the taking of judgment on all the issues, for failure to make discovery as to one, can only be justified on the theory that the judgment is given as a punishment for the failure to make discovery, and it may well be doubted whether such a proceeding can be sustained under the authorities above cited." *Id.* at 1121, quoted in 361 P.2d at 747.

■ At no time during the hearing on the motion for sanctions, nor in its supporting memoranda, nor in its argument on appeal, has Sierra shown that its inability to discover the confidential sources obstructed its ability to prove the falsity of the publications. Sierra Life cites a variety of cases upholding trial court discretion to default a defendant refusing to comply with a discovery order. However, in each of the cases cited, the product of discovery, viewed most favorably to the plaintiffs, would have produced proof sufficient to sustain a judgment against the defendants. Sierra has not pointed out how revelation of sources would have been instrumental in establishing that the articles were in fact false. In such circumstances, the rule of *Hovey v. Elliott, Rogers,* and *Mitchell v. Watson, supra,* should apply.

Since the trial court erroneously struck all of the defendants' pleadings and entered a default judgment, we reverse and remand with directions for reinstatement of the defendants' pleadings and further proceedings consistent with the views herein expressed.

### III.

On remand we offer some guidance on other issues raised on the appeal. The newspaper contends that the initial error here was in the trial court's order directing the defendants to reveal their confidential sources, and that a correct ruling at that point would have avoided placing the court in the ensuing situation which resulted in the imposition of sanctions. Thus the holding in *Caldero* and its application to the facts of this case is of concern. The debate over the validity of *Caldero* was apparently put to rest by the United States Supreme Court in *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). There a libel plaintiff attempted to obtain through the discovery process information concerning the manner in which a story about him had been prepared. The defendant resisted discovery on the grounds of an asserted "editorial privilege." The court denied that such a privilege could be successfully asserted when a plaintiff was seeking legitimate evidence to prove the requisite constitutional malice. The court was sympathetic to the defendants' contention that discovery can be used as a weapon to harass litigants. It nonetheless rejected the notion that this complaint was unique to journalists:

"[M]ushrooming litigation costs, much of it due to pretrial discovery, are not peculiar to the libel and slander area. There have been repeated expressions of concern about undue and uncontrolled discovery, and voices from this Court have joined the chorus. But until and unless there are major changes in the present rules of civil procedure, reliance must be had on what in fact and in law are ample powers of the district judge to prevent abuse.

"The Court has more than once declared that the deposition–discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials. But the discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they 'be construed to secure the just, *speedy,* and *inexpensive* determination of every action.' (Emphasis added.)

To this end, the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .' With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Id.* at 176, 99 S.Ct. at 1649 (citations omitted).

■ We recognize that the news media rely upon confidential sources in the preparation of many stories, particularly those involving government or large organizations. The ability to keep the identity of those sources confidential is not infrequently a prerequisite to obtaining information. This interest, while legitimate, is not so paramount that the legitimate discovery needs of a libel plaintiff must bow before it. But by the same token a trial court can be expected to exercise caution when it orders these sources to be revealed. As the Supreme Court of the United States has suggested, the first question to be answered is whether the identity of the sources is *relevant.* In *Caldero,* the very crux of the case was whether or not the "police expert" actually existed, and whether or not he said that which the newspaper published. Relevance was there established beyond quibble.

Here, however, the existence of "confidential sources" was never declared in any of the articles, nor is it shown that the information gained therefrom was used directly in any of the stories; it appears that such sources served only to make the newspaper aware of where information was available.

On remand the district court should reconsider Sierra's motion to compel discovery in light of the views herein expressed and any other evidence and authority which the parties may present. If the motion is granted, and discovery is refused, the district court may then take up anew the matter of requested sanctions, also to be done in light of the views herein expressed

and any other authority, and relevant evidence, which the parties may present.

■ Finally we consider the newspaper's contention of error on the part of the trial court in tabling the newspaper's motion for summary judgment. If it is determined that there is no triable issue of fact as to any issue upon which the newspaper as a matter of law would be entitled to prevail, and such is an issue the proof of which is essential to *Sierra's* case, the motion should be granted even though factual dispute on some other issue might otherwise prevent the entry of judgment. *Collord v. Cooley,* 92 Idaho 789, 451 P.2d 535 (1969).

The trial court will exercise its own discretion in determining the order in which it takes up the foregoing motions, and in all further proceedings.

Reversed and remanded. Costs to appellant.

DONALDSON, C. J., BAKES and McFADDEN, JJ., and THOMAS, J., Pro Tem., concur.

BAKES, Justice, concurring specially:

I write only to emphasize the last issue treated by the Court relating to the trial court's tabling the newspaper's motion for summary judgment. In *Hemingway v. Fritz,* 96 Idaho 364, 529 P.2d 264 (1974), we held that a libel defendant's refusal to respond to discovery would not preclude the issuance of a motion for summary judgment in favor of the defendant if the record on motion for summary judgment disclosed that all the alleged libelous statements were true. As the Court points out in its opinion, *ante* at 108, "Sierra has not pointed out how revelation of sources would have been instrumental in establishing that the articles were in fact false." Therefore, on remand, if the record in support of the defendants' motion for summary judgment establishes the truthfulness of the alleged libelous statements, and the defendants are unable to demonstrate "how revelation of [the] sources would have been instrumental in establishing that the articles were in fact false," summary judgment should be en-

tered in favor of the defendants. *Hemingway v. Fritz, supra.*