746 P.2d 985

SOUTHERN IDAHO PRODUCTION
CREDIT ASSOCIATION, a
corporation, Plaintiff-respondent,

v.

Josephine ASTORQUIA and Frank As-
torquia, individually and as partners of
Astorquia and Astorquia, f/k/a Astorq-
uia and Osa, Defendants-appellants,

and

Jose Osa, a/k/a Joe Osa, and Lucia Osa,
husband and wife; Eben Young, Jr.,
and his unknown heirs and devisees
herein designated as Doe 1–100; Pedro
Celeya, Antonio Celeya, Jose M. Celeya,
Juliana Celeya and Maria Celeya, as
the heirs and devisees of Tomas Celeya,
deceased; Carmen A. Maestas, f/k/a
Carmen A. Astorquia; and the United
States of America, Defendants.

Jose OSA, a/k/a Joe Osa, and Lucia Osa,
husband and wife, Counterclaimants,
cross claimants,

v.

SOUTHERN IDAHO PRODUCTION
CREDIT ASSOCIATION, a corpora-
tion, Counterdefendant, respondent,

and

Josephine Astorquia and Frank Astorq-
uia, Individually and as partners of As-
torquia and Astorquia, f/k/a Astorquia
and Osa, Cross defendants, appellants,

and

Carmen A. Maestas, f/k/a Carmen A. As-
torquia; and the United States of
America; Does 1–100, as persons in
possession or claiming any right to pos-
session, Cross defendants.

No. 16658.

Supreme Court of Idaho.

Nov. 16, 1987.

Fuller & Meservy, Jerome, Idaho, for defendants-appellants. James C. Meservy argued.

Nelson, Rosholt, Robertson, Tolman & Tucker, Twin Falls, Idaho, for plaintiff-respondent. James C. Tucker argued.

BAKES, Justice.

Appellants Josephine and Frank Astorquia appeal from a district court order granting summary judgment to respondent Southern Idaho Production Credit Association (SIPCA) as well as the district court's prior order imposing sanctions on appellants for failure to comply with discovery requests of respondent. Primarily, appellants contend on appeal that the district court abused its discretion in awarding sanctions against them. The sanctions imposed by the district court included striking of appellants' affirmative defenses and counterclaim against SIPCA. We affirm in part, vacate in part and remand for further findings.

SIPCA loaned money to the Astorquias for farming operations. The loans were secured by mortgages and security interests on real and personal property owned by the Astorquias. The Astorquias defaulted on the loans and SIPCA instituted foreclosure proceedings on January 23, 1983. The Astorquias, through counsel, answered SIPCA's complaint on May 10, 1983, and filed a counterclaim alleging negligence, misrepresentation, breach of fiduciary duty and emotional distress and humiliation. SIPCA answered the counterclaim in June, 1983. Shortly thereafter, appellants filed for reorganization under Chapter 11 of the bankruptcy act and, as a result, all proceedings by Astorquia's creditors were stayed by the bankruptcy court for nearly two years.

On April 1, 1985, the automatic stay was lifted by the bankruptcy court to allow SIPCA and other creditors to litigate their claims in state court, presumably to facilitate formulation of a debtor reorganization plan. Once the stay was lifted, other defendants, Jose and Lucia Osa, who were also creditors of Astorquias, commenced their own mortgage foreclosure proceedings against one parcel of property owned by Astorquias on which the mortgage held by Osas was prior to the mortgage of SIPCA.[1] Osas were granted judgment on June 3, 1985 based on Astorquia's failure to respond to Osa's motion for summary judgment seeking foreclosure of their mortgage or to appear at the scheduled hearing on the motion. A sheriff's sale was held and the Osas are now record owners of that particular piece of property.

After the stay was lifted, SIPCA also proceeded with its foreclosure complaint against appellants and its defense of appellants' counterclaim. On November 20, 1985, SIPCA sent interrogatories and a request for production of documents relating to the defenses and the counterclaim to appellants' counsel. When the answers were not forthcoming, SIPCA filed a motion to compel on March 3, 1986. Neither appellants nor their counsel appeared at the May 7, 1986, hearing on the motion to compel, and the motion was granted. The district court ordered Astorquias to answer SIPCA's interrogatories and respond to the request for the production of documents within 20 days. Appellants did not respond to the court's order compelling discovery, nor did they appear at depositions which were scheduled for May 14, 1986. SIPCA contacted one of appellants' counsel the day before appellants' depositions were to be taken; counsel stated that he did not intend to be present at the depositions.

As a result of appellants' failure to comply with the discovery requests and order of the district court, SIPCA, on June 5, 1986, filed a motion for sanctions for fail-

---

1. The parcel of property was mortgaged to SIPCA but subsequent to the creation of Osa's mortgage. As junior mortgagee, SIPCA's interest in the property was subject to foreclosure by the Osa proceedings saving only SIPCA's right of redemption. Osas do not claim any interest in the remaining real property subject to SIPCA's liens.

ure to comply with discovery, pursuant to I.R.C.P. 37(b). The motion requested:

1. An order refusing to allow the Astorquias to offer evidence to support their counterclaim filed in this action, or to oppose the claims of the plaintiff seeking to foreclose its mortgages and security interests.

2. An order dismissing Astorquias' counterclaim with prejudice.

3. An order striking the answer and affirmative defenses of the Astorquias and entering a judgment by default on the plaintiff's complaint.

4. An order holding the Astorquias in contempt of court for failure to respond to the request for production and interrogatories in accordance with the court's previous order.

5. An order directing the Astorquias to pay reasonable expenses, including attorney fees, caused by the failure of the Astorquias to comply with discovery.

The district court granted only part of the relief requested by SIPCA. The court allowed appellants' answer to stand and required SIPCA to prove its entire claim, but struck the appellants' pleadings which were the subject of the discovery requests, i.e., the appellants' affirmative defenses and counterclaim relating to the appellants' money damages claim for misrepresentation, breach of fiduciary duty, etc. It was those allegations to which SIPCA's discovery requests were directed. The trial court further found that the failure of appellants to supply the information requested in the discovery impaired SIPCA's ability to defend against those pleadings.

Thereafter, SIPCA moved for summary judgment establishing by affidavit that Astorquias had indeed borrowed the money, signed the notes and mortgages, and were in default in their payments under the terms of the notes and mortgages. Astorquias did not seriously contest SIPCA's motion for summary judgment of foreclosure of their notes and mortgages, but merely filed a motion to reconsider the imposition of sanctions and a motion for a Rule 54 certification of the order granting sanctions. The district court denied appel-lants' motions for reconsideration and granted SIPCA's motion for summary judgment. The order granting summary judgment was certified for appeal under I.R.C.P. 54, and Astorquias have appealed.

Appellants raise no issue on appeal concerning the order granting summary judgment on the foreclosure. Their appeal assigns error only to the order granting sanctions. Thus, the sole issue raised on appeal is whether it was appropriate for the trial court to dismiss the appellants counterclaim and strike their affirmative defenses for failure to comply with the discovery requests and orders.

■ In *Devault v. Steven L. Herndon,* 107 Idaho 1, 684 P.2d 978 (1984) we were faced with circumstances similar to those of the present case. In *Devault* we held that the imposition of sanctions pursuant to I.R.C.P. 37(b) was a matter entrusted to the sound discretion of the trial court. In reviewing on appeal a trial court's exercise of its discretionary powers, we have consistently held that such will not be overturned absent a *manifest* abuse of that discretion. *See Quick v. Crane,* 111 Idaho 759, 770, 727 P.2d 1187, 1198 (1986); *Devault v. Steven L. Herndon, supra.* An appellant bears the burden in establishing an abuse of trial court discretion. To establish such an abuse, an appellant must show that the trial court's findings are clearly erroneous and that it did not properly identify and apply the law to the facts found. *Shelton v. Diamond International Corp.,* 108 Idaho 935, 703 P.2d 699 (1985); *Avondale on Hayden, Inc. v. Hall,* 104 Idaho 321, 658 P.2d 992 (Ct.App.1983). Appellants argue that the sanctions were too severe under the particular circumstances of this case. Specifically, they assert that the failure to comply with the discovery orders of the district court is entirely attributable to conduct of their attorneys, i.e., it was not their fault.

■ The record is clear that all of the discovery requests, notices of depositions, and the notice of hearing on the motion to compel discovery were properly served on appellants' counsel as required by the Idaho Rules of Civil Procedure. Appellants

nevertheless argue that they were never personally informed by their attorneys of: (1) SIPCA's requests for information concerning the counterclaim (*i.e.*, the interrogatories); (2) the scheduling of hearings on the discovery requests; or, (3) the scheduling of their depositions. Under such circumstances, they argue, lesser sanctions should have been resorted to first. In short, the argument is that the sanctions imposed by the trial court *unjustly* visit the sins of the attorneys upon the heads of their clients. Appellant's argument is without merit. This Court held in *Devault, supra,* that it is no excuse that the failure to comply with court orders is the fault of a litigant's attorney. "[L]itigants freely choose their attorneys and cannot avoid the consequences of the attorney's actions." *Devault,* 107 Idaho at 2, 684 P.2d at 979. The Court stated the policy underlying its holding as follows.

> " 'In upholding the district court's [sanctions], we recognize that the result may well penalize Appellant more than his counsel. However, ... [i]n recognizing the relative hardship upon Appellant as distinguished from counsel, it must be kept in mind that *district courts cannot function efficiently unless they can effectively require compliance with reasonable rules. Absence of meaningful power to require that compliance would make for disorder and preclude effective judicial administration at the trial court level.' "* 107 Idaho at 2–3, 684 P.2d at 979–980, *quoting Chism v. National Heritage Life Ins. Co.,* 637 F.2d 1328, 1332 (9th Cir.1981) (emphasis added).

Additionally, appellants were not entirely without fault. The record indicates that appellants had some knowledge of both SIPCA's discovery attempts and of their counsel's inability to meet his obligations of representation. In the affidavit supporting respondents' motion for sanctions, the attorney for SIPCA indicates that appellants were informed of SIPCA's interrogatories and requests for production of documents via their bankruptcy attorney who on behalf of appellants requested "some additional time within which to respond to the Interrogatories and, further, to develop [a] settlement proposal." The record further reflects that the reason given by appellants' bankruptcy counsel for needing the additional time was that "they [the Astorquias] were having some difficulty getting together all the answers to the interrogatories." A request for additional time was apparently granted by SIPCA even though the time for responding to its discovery requests had passed.[2] Nothing in the record contradicts the statements contained in the affidavit of SIPCA's attorney.[3] Indeed, the supplemental affidavit of Frank Astorquia, submitted in opposition to the motion for sanctions, clearly indicates that he had knowledge that his attorneys had been less than careful in attending to his case. Mr. Astorquia states that *"shortly* after" his counsel informed him that his associate would be handling the defense and counterclaim against SIPCA, "a number of problems started to develop in [his] case. There seemed to be *ongoing* problems with things being filed on time, etc." Yet, despite this knowledge, Mr. Astorquia states that he "had very limited contact with [his counsel] during this time." *Id.* at 133.

Mr. Astorquia's lack of attention to his legal problems could have been inferred by the trial court from the foreclosure proceedings initiated by the Osas. Neither Mr. Astorquia nor his counsel appeared at

---

**2.** The date for answering the interrogatories was February 15, 1986. In fact, when appellants' bankruptcy counsel requested additional time to respond, SIPCA had already filed a motion to compel discovery which was noticed for a hearing on March 10, 1986. The request for additional time from appellants' bankruptcy counsel was made prior to the hearing date. SIPCA agreed to the request for more time, and the hearing date on the motion to compel was rescheduled, at SIPCA's request, and heard on May 5, 1986.

**3.** The affidavits of appellant Frank Astorquia, submitted in opposition to SIPCA's motion for sanctions, makes no mention of the interrogatories, but only avers that he did not know about the scheduling of his deposition or the hearings relating to the motion to compel discovery. The latter averment is inferentially controverted by statements in the affidavit of SIPCA's attorney.

those proceedings and for all intents and purposes the summary judgment of foreclosure obtained by the Osas was a default judgment. Whatever the reasons may have been for counsels' failure to appear at that those proceedings, at a minimum the foreclosure, sale and subsequent dispossession of his property should have provided Mr. Astorquia with ample notice that his attorneys were neglecting his interests. His belated attempts in the present case, over a year later, to cast fault for repeated neglectful behavior solely on the heads of his attorneys were justifiably less than well received by the trial court.

The district court did not impose the most severe sanctions which it might have considered, such as jailing the appellants for contempt, or striking all the appellants' pleadings and entering a default judgment for SIPCA, as was the case in *Sierra Life Ins. Co. v. Magic Valley Newspapers*, 101 Idaho 795, 623 P.2d 103 (1980).[4] Rather, the district court only "[took] away those defenses which [were] ... affected by [Astorquias'] refusal to disclose," as the court in *Sierra Life Ins. Co. v. Magic Valley Newspapers, supra* at 799, 623 P.2d 103, suggested was an appropriate remedy. In this case, the district court struck only the Astorquias' pleadings which were the subject of the discovery requests, *i.e.*, the counterclaim and affirmative defenses. The district court found that SIPCA would be prejudiced if it had to go to trial and defend against claims of fraud, negligence, breach of fiduciary duty and intentional infliction of emotional distress and humiliation, when

the Astorquias had refused to respond to SIPCA's request for discovery related to the Astorquias' factual basis for those claims.

 On appeal appellants argue that the district court should have first resorted to lesser sanctions before imposing the sanctions which it did. It is suggested that the court could have imposed costs and attorney fees against either Astorquia, or against his attorney of record. It is further suggested that the court could have stayed the proceedings further until the discovery order was obeyed.

Regarding the assessment of costs and attorney fees, the trial court made no specific finding that these sanctions would not have been adequate, even though there is a statement in the record by appellants' new counsel that "[t]here may be, I think the court has sanctions with costs and other things that can be incurred. My client doesn't have any money, quite frankly." The court never made any specific findings whether or not the assessment of costs and attorney fees against either the appellants or their former attorney would have been inadequate, and such a specific finding is necessary in order to sustain the more serious sanctions imposed in this case.

Regarding appellants' suggestion that a further stay of proceedings would have been a more appropriate sanction until the discovery order was obeyed, the trial court specifically found that SIPCA had been prejudiced by appellants' previous failure to respond to the discovery requests and

---

4. In *Sierra Life Ins. Co. v. Magic Valley Newspapers, supra,* the Court was faced with a situation in which the defendants answered the interrogatories and other discovery requests, and appeared and submitted themselves to depositions, but refused to disclose the names of confidential informants whose names were not used in any of the articles. The defendants based their refusal to disclose the names of the confidential informants on their claim of constitutional privilege under the first amendment of the United States Constitution. The defendants did not ignore the discovery requests and court order compelling discovery, as was done in this case, but appeared in response to each request and asserted the limited constitutional privilege, otherwise responding to all of the questions and discovery requests made. The trial court in the

*Sierra Life* case struck all of the pleadings, including "those defenses which [were] not affected by [their] refusal to disclose," *ante* at 799, 623 P.2d 103, and entered a default judgment against all of the defendants. At the time the court issued its order granting sanctions in *Sierra,* the individual defendant reporters, High and Lazarus, were no longer employed by the corporate defendant Magic Valley Newspaper, and the newspaper and its publisher defendant William E. Howard alleged that they did not know the names of the informants and thus had no ability to comply with the court's order. The district court in *Sierra Life* nevertheless refused to limit the sanctions only to High and Lazarus on the ground that he did not want to "make them martyrs to the unbelievers."

orders. However, the trial court made no specific finding that further delay would have additionally prejudiced SIPCA, although had he done so there would have been evidence to sustain such a finding. Interest was accruing at the rate of over $200,000 per year on the outstanding principal balance, and the collateral security for the nearly $2,000,000 loan, both real and personal property, was depreciating and disappearing from the premises. However, the trial court should have made specific findings regarding whether or not the alternate sanction of staying the proceedings until the discovery order was complied with would have been an inadequate sanction.

Accordingly, we remand this matter to the trial court for more detailed findings regarding whether there are lesser sanctions which would adequately compel appellants' compliance with the court's discovery orders and protect SIPCA. We do not imply that the trial court's sanction of dismissal was improper under the facts of this case. We only hold that before ordering the drastic remedy of dismissal of defenses and counterclaim, a trial court must consider lesser sanctions, and that if dismissal is nevertheless ordered, appropriate findings of fact must be made. *See Boudwin v. Graystone Ins. Co., Ltd.,* 756 F.2d 399, 401 (5th Cir.1985) (trial court must explain why lesser sanctions would be inadequate). Here, the trial court did not do so. Since the trial court required SIPCA to prove its claim on the foreclosure proceedings, and allowed the appellants to contest the amount of the claim, the summary judgment may stand. However, in regard to the counterclaim and affirmative defenses being stricken, we vacate and remand with instructions to the trial court to consider lesser sanctions and, if striking the counterclaim and affirmative defenses is still found to be the proper course of action, to provide more detailed findings of fact and conclusions of law by stating his reasons why the sanction of striking the counterclaims and affirmative defenses is proper, and lesser sanctions are ineffective.

Affirmed in part, vacated in part, and remanded. No costs or attorney fees allowed.

SHEPARD, C.J., and DONALDSON * and HUNTLEY, JJ., concur.

DONALDSON, Justice, specially concurs.

I concur with the majority opinion and agree that the trial judge needs to make more detailed findings explaining why the dismissal order constituted the first sanction. However, I find it necessary to write to clarify the standards surrounding the sanction power—in hopes that it will give some guidance to the trial judges when imposing sanctions.

The majority recognizes that the imposition of sanctions pursuant to I.R.C.P. 37(b) is a matter entrusted entirely to the sound discretion of the trial court. *Devault v. Herndon,* 107 Idaho 1, 684 P.2d 978 (1984). However, we did not rule in *Devault* that any time a trial judge orders sanctions in the form of a dismissal of claims, his actions will be affirmed on appeal as a proper exercise of discretion. An appellate court must first determine whether the lower court properly applied the correct legal standard governing the available discretionary alternatives.

Sanctions serve a dual purpose. They can be used to "punish misconduct and deter others involved in litigation to prevent abuse in connection with discovery ..." *Devault, supra,* 107 Idaho at 2, 684 P.2d at 979. It is also equally true that sanctions can be used to encourage and aid in discovery. *United States v. Sumitomo Marine & Fire Ins. Co.,* 617 F.2d 1365 (9th Cir.1980). At first blush, these twin aims may seem to be in conflict, but in reality are congruent. The trial judge should use the sanction power wisely and ultimately try to achieve the efficient administration of justice. He should not consider one aim more important than the other aim, but generally he should try to attempt to satisfy the aim of encouragement before applying the more drastic punishment sanction.

* DONALDSON, J., sat and participated fully in the decision and opinion prior to his death.

As noted by Wright & Miller regarding the use of sanction power in the federal courts,

"... [I]t seems especially fitting that courts should make the punishment fit the crime and should not impose a drastic sanction that will prevent adjudication of a case on its merits except on the clearest showing that this course is required.... The courts have ... exercised their discretion in a fashion intended to encourage discovery rather than simply to punish for failure to make discovery." 8 Wright & Miller, *Federal Practice and Procedure* 2284, pp. 767–72 (footnotes omitted).

Thus, before reaching a decision to dismiss, the trial judge should first endeavor to determine whether lesser sanctions will achieve the desired result of valid litigation between informed parties. As contained in the Idaho rule, there are many alternatives that can be tried before dismissal becomes appropriate. For example, the trial judge may award costs against either the party, or his attorney. I.R.C.P. 37(b)(2)(E). The trial judge may issue an order which establishes disputed facts in favor of the moving party and against the disobedient party. I.R.C.P. 37(b)(2)(A). Of course, as noted in the rule, the court is not limited to the alternatives expressly provided for. I.R.C.P. 37(b)(2) states "... the court in which the action is pending may make such orders in regard to the failure as are just,...."

One party should not be thrown out of court without consideration of some of the lesser alternatives available to the trial judge. If the litigation can be expediently moved on, simply by an award of costs against the guilty party, then this would be the appropriate action. The trial judge must first consider these lesser alternatives before reaching for the more drastic remedies available. However, this is not to say that dismissal will never be appropriate as the first sanction order. The party requesting sanctions, the innocent party, should not be prejudiced by the delays caused by the party failing to prosecute its action. There are times when an award of costs may be meaningless because the party causing the delay lacks sufficient money. Other factors to consider is the length of time a trial might have to be postponed to allow the parties to properly meet the criteria imposed by the judge. Also, it is conceivable that the party seeking sanctions wants to prosecute its claim to enable to foreclose on property which is sitting idly and decreasing in value. In these types of situations, it is proper for the trial judge to consider the relative fault of the parties and the equities of who will be harmed by what sanction. Essentially, there is no set rule as to when to impose what sanction. The trial judge must balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party in light of the twin aims of the sanction power. Only after applying this balancing test, the court should impose a sanction which will most substantially lead to the efficient administration of justice.

The trial judge must have wide discretion in making a sanction order. However, when examining the first sanction order, if it is an order of dismissal, an appellate court will scrutinize it much more closely than it will a lesser sanction. This is not to say that dismissal will never be proper as a first sanction order. However to sustain such an order, the trial judge must make detailed findings as to why a lesser alternative is not proper.

The sanction power, when used correctly, is a tool which can expedite litigation and punish those who try to forestall justice. With the guidelines I have set forth, it is hoped that the trial courts will be able to wisely exercise the power and safeguard the court system from a waste of resources, and undue delay.

HUNTLEY, Justice, concurring specially.

I concur in reversing the order imposing the sanction of dismissal of the affirmative defenses and counter-claim and remanding for want of adequate findings to support its entry. Furthermore, my view is that the present record, absent supplementation by facts of which we have no

knowledge, will not present a basis upon which dismissal can be ordered.

The client had violated no previous court orders and there remained ample time to complete discovery before trial. The trial had never been continued and, at worst, could have been postponed two to three weeks if necessary for completion of discovery without prejudice to either side. Here it should be emphasized that the Astorquias were entirely without fault. Rather, it was their first two attorneys who failed to comply with the court order. In his affidavit, Frank Astorquia stated:

> I was not contacted concerning any hearings or any requests for my presence at depositions. During this entire period between the filing of this matter and today, I have paid large sums of money to each of these attorneys and fully expected them to keep me advised.... Neither [attorney] at any time advised me of hearing dates or deposition dates in this matter.

It should also be noted that appellants had retained new (a third) counsel prior to the hearing on the motion for sanctions who apparently was diligently processing the litigation and assured the trial court he would expeditiously process the discovery.

The case law relating to the sanction of dismissal holds that, while the imposition of sanctions is normally a matter entrusted to the trial courts, it is an extreme sanction to be reserved for flagrant and egregious cases, and generally to be given only when a showing of bad faith on the part of the client has been made and after less severe sanctions have first been imposed; and that rather than punishing through dismissal, courts should first seek to encourage discovery through lesser sanctions. Wright and Miller note that the sanction power is intended "to encourage discovery rather than simply to punish for failure to make discovery." 8 Federal Practice and Procedure, Wright & Miller § 2284 (1970). In *Jackson v. Washington Monthly Co.,* 569 F.2d 119, 123 (D.C.Cir.1977), that court persuasively noted:

> Trial court dismissal of a lawsuit never heard on its merits is a drastic step, normally to be taken only after unfruitful resort to lesser sanctions. And while appellate review is limited by the binding authority of *Link* [*v. Wabash Railroad Company,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)] to whether judicial discretion has been abused, a sound discretion hardly comprehends a pointless exaction of retribution. Dismissals for misconduct attributable to lawyers and in no wise to their clients invariably penalize the innocent and may let the guilty off scot free. That curious treatment strikes us as both anomalous and self-defeating. When the client has not personally misbehaved and his opponent in the litigation has not been harmed, the interests of justice are better served by an exercise of discretion in favor of appropriate action against the lawyer as the medium for vindication of the judicial process and protection of the citizenry from future imposition. Public confidence in the legal system is not enhanced when one component punishes blameless litigants for the misdoings of another component of the system; to laymen unfamiliar with the fundamentals of agency law, that can only convey the erroneous impression that lawyers protect other lawyers at the expense of everyone else.

The concerns and rationale expressed in *Jackson* have been followed by a broad line of cases. *See North v. Department of Mental Health,* 427 Mich. 659, 397 N.W.2d 793 (1986); *Titus v. Mercedes Benz of North America,* 695 F.2d 746 (3d Cir.1982); *Rogers v. Kroger Co.,* 669 F.2d 317 (5th Cir.1982); *Donnelly v. Johns–Manville Sales Corp.,* 677 F.2d 339 (3d Cir.1982); *Flaska v. Little River Marine Construction Co.,* 389 F.2d 885 (5th Cir.1968), cert. den. 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968).

In the instant case, the Astorquias aver that they were never personally informed by their first attorneys of SIPCA's request for information concerning the counterclaim (the interrogatories); the scheduling of hearings on the discovery requests; and the scheduling of the depositions. Frank Astorquia stated, in his affidavit, that he paid "large sums of money" to his attor-

neys and assumed his legal matter was being handled. Additionally, prior to the hearing of the motion for sanctions, the Astorquias retained new counsel, who gave every indication of complying with future discovery orders. Importantly, the motion for sanctions was heard nearly sixty days prior to trial. All of the above facts militate in favor of the Astorquias. Their lack of knowledge regarding their first attorneys' non-prosecution of their claim belies any culpability on their part. Also, the stated goal of the trial court's right to render sanctions, that being to *encourage* discovery (rather than to punish those who have heretofore not complied with discovery orders) could have been served, as ample time to complete discovery remained before trial. There was no indication that Astorquias' new counsel would fail to comply with court orders.

This court recently reaffirmed the general rule that sanctions should not merely be used to punish in *Sierra Life Ins. v. Magic Valley Newspapers*, 101 Idaho 795, 623 P.2d 103 (1981). The record contains a statement from Frank Astorquia wherein he acknowledged that he knew that "some things were not being filed on time, etc." However, to punish a client whose only fault is an errant choice in initial counsel and to hold that client essentially to an attorney's standard in ascertaining "warning signals" regarding the non-prosecution of a claim does not serve the legitimate goal of enhancing the efficient management of the judicial system. Rather, such misguided and draconian punishment serves only to besmirch the reputation of the legal system as a whole, and the legal profession in particular. The Astorquias contracted with a reputable attorney to defend and prosecute their claims. Part of the bargain entered into in any legal contract should be the right to rely somewhat upon the judgment of the attorney hired. Sadly, the Astorquias did not receive the benefit of their bargain, but they should not be penalized twice by also being denied the right to have their affirmative defenses and counterclaims heard on their merits. The majority opinion urges that, at the very least, the Astorquias should have been alerted to the negligence of their first attorney when a default judgment was entered against them in favor of the Osas. Without a record establishing the particulars of the Osas' claim and the nature of any defenses the Astorquias might have had thereto, we are in no position to ascribe any import to the fact entry of default was permitted. However, it was the failure to comply with discovery orders concerning the matter involving SIPCA, and not the claims of the Osas, which led to the sanction of dismissal in the instant case. The Astorquias might reasonably have assumed that all was well regarding the handling of the matter against SIPCA.

It has long been held that fifth amendment due process protections apply to protect claimants from the unjust imposition of sanctions given for failure to comply with pretrial orders, where such claimants have made a good faith effort to comply. *Societe Internationale, Etc. v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958). (See also, *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909); *Hovey v. Elliott*, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897).)

As explained in *Societe Internationale* and a host of other due process cases, the guarantee of substantive due process requires that state action (here, the dismissal of the affirmative defenses and counterclaims by the court) have a rational relationship to a legitimate end of the government. The need for efficiency and respect for the judicial system, as guaranteed through its sanction powers, is such a legitimate end. However, here there is no rational relationship between the dismissal of the Astorquias' affirmative defenses and counterclaims and the efficient operation of the judicial system. The Astorquias had their right to prosecute a legal claim denied without consideration of lesser sanctions despite their retention of new counsel, averment of lack of culpability in the failure to make discovery, and the existence of two months time prior to the scheduled trial in which discovery could have been made. The imposition of the ultimate sanction of dismissal was, in this instance, of no

value as either a deterrent or a means of encouraging future discovery, in this case or in future cases involving claimants similarly situated, as it would be unreasonable to expect the Astorquias, or anyone else, to have done more to prosecute their own claims under the given circumstances.

Ultimately, this case presents a question of fundamental fairness. We have here two defendants who have averred in affidavits that they had no knowledge of their first attorney's negligence in attending to their legal matters; we have a long line of precedent mandating that the ultimate sanction of dismissal be used only in egregious cases and only after lesser sanctions are first used. Lesser sanctions were not considered, even though two months remained before trial which could have been used to complete discovery. I believe the trial court grossly abused its discretion in granting the sanction of dismissal of the Astorquias' counterclaims, in effect directing a verdict for SIPCA, without first resorting to lesser sanctions. Had such lesser sanctions ultimately proved ineffectual, the sanction of dismissal would have remained open to the trial court.

BISTLINE, J., concurs.